OPINION
Appellant State Farm Mutual Insurance Company appeals a judgment of the Licking County Common Pleas Court declaring the amount of underinsurance coverage available to appellees, Larry, Carolyn, Jeremy, Ashley, and Carol Ross, on a policy of insurance with appellant to be $600,000:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS/APPELLEES' MOTION FOR PARTIAL SUMMARY JUDGMENT.
The parties stipulated to the relevant facts before the trial court on cross motions for summary judgment.
Larry and Carolyn Ross are appointed administrators of the Estate of David Ross, and guardians of appellees Jeremy, Ashley, and Carol Ross. Jeremy, Ashley, and Carol are the minor children of the decedent, David Ross. Larry and Carolyn Ross are the parents of the decedent.
On April 15, 1995, the decedent was killed in an automobile accident caused by the negligence of Harry Wolfe and Max Craiglow. Each tortfeasor settled with appellees for the limits of his liability coverage, in the amount of $50,000 each.
On the date of the accident, appellees were each defined as insureds by a policy of insurance issued by appellant. This policy provides uninsured/underinsured motorist coverage in the amount of $100,000 per person, and $300,000 per occurrence.
The parties both agreed that pursuant to Wolfe v. Wolfe (2000),88 Ohio St.3d 246, each of the appellees is entitled to the per person limit of the underinsured motorists coverage policy, subject to the per accident limit. Appellant moved for summary judgment, asking the court to hold the maximum amount of coverage available under the policy to be $300,000. Appellees argued on a motion for summary judgment that the maximum amount available is $300,000 per tortfeasor, providing a maximum of $600,000, as both tortfeasors were underinsured. The trial court concluded that the policy was ambiguous as to what limitation applied in case of multiple wrongful death claims, and further was silent regarding the applicable limitation when more than one tortfeasor was involved. Construing the language against appellant and in favor of appellee, the court concluded that $600,000 was available under the policy.
 I
The contract in the instant case went into effect on October 23, 1993. Amended Revised Code Chapter 3937 was effective on October 20, 1994. However, pursuant to Wolfe, supra, despite the fact that the accident occurred after the effective date of amended R.C. 3937, the law that was in effect on the day the contract was entered applies to the case. Therefore, the court considered appellant's stacking claim pursuant to the law as stated in Savoie v. Grange Mutual Insurance Company (1993),67 Ohio St.3d 500.
We agree with appellees that this case does not involve stacking, which occurs where the limits of uninsured/underinsured coverage, afforded by multiple separate policies, are aggregated together to provide a larger source of compensation to the insured for the damages sustained as the result of negligence. Appellees are not attempting to aggregate coverage afforded to appellees by more than one policy. Rather, the appellees are attempting to apply the uninsured/underinsured coverage available under a single policy separately as to each of two joint tortfeasors.
The policy provides:
 The following provision applies if the Declarations indicates split limits:
 The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. Except in wrongful death, when "bodily injury" to any one person gives rise to two or more separate and distinct causes of action, the limit of liability stated with respect to each person shall be inclusive of all such causes of action. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
The trial court did not err in concluding that the policy does not limit the coverage available to a single claim, despite the existence of two underinsured tortfeasors. As noted by the court, if the policy language ended with the sentence providing that the limit of liability for each accident is the maximum for all damages for bodily injury resulting from any one accident, the available limits would be the per accident amount regardless of the number of tortfeasors. However, the policy goes on to provide limitations, excepting wrongful death claims from such limitations. One interpretation of this language is that by explicitly excepting multiple wrongful death claims from the per person limitation, the policy intends to limit multiple wrongful death claims to the per accident limit. However, the policy does not clearly state that this is the intent. Further, the limiting language for cases other than wrongful death identifies the number of insureds, the number of claims, the number of vehicles covered by the policy, and the number of vehicles involved in the accident as items which will not affect the limitation, but is silent with regard to the number of tortfeasors involved in the accident. In addition, the provisions could be read to exclude wrongful death claims because appellant intended to provide full coverage for each individual wrongful death cause of action. Because the provision, when read in full, is susceptible to more than one interpretation, the court correctly construed the language against the drafter and in favor of appellees.
As noted by the court and the parties, no Ohio case addresses the precise issue in the case at bar. However, in Motorists Mutual InsuranceCompany v. Tomanski (1971), 27 Ohio St.2d 222, the plaintiff brought a claim against two tortfeasors, one of whom was insured, and one of whom was uninsured. The issue in Tomanski was whether the insured's contractual right to receive uninsured coverage was eliminated by the presence of a second vehicle involved in the accident, which was insured. The court concluded that the presence of an insured motor vehicle in the accident did not abrogate the right of the insured to receive uninsured motorists coverage based on the involvement of the uninsured driver in the accident. Id. at syllabus. The principle underlying this holding, which permits recovery against each tortfeasor separately, is analogous to the instant case. The court did not make a distinction between the tortfeasors and whether coverage was available for each, but rather treated each tortfeasor separately. We find no reason to distinguishTomanski from the instant case solely on the basis that both drivers in the instant case were uninsured.
The assignment of error is overruled.
The judgment of the Licking County Common Pleas Court is affirmed.
Gwin, J., Farmer, J., concur.
Edwards, P.J. concurs separately.